[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AS CONCERNS PLAINTIFF'S MOTION TO OPEN AND MODIFY JUDGMENT POST-JUDGMENT, DATED FEBRUARY 13, 2002
On February 21, 2002 the plaintiff, Charles P. Ahnell, through counsel filed a motion to open and modify judgment, post judgment, in which motion to open the plaintiff represents that since the date of the court order, meaning September 26, 1996, there has been a substantial change in circumstances. The motion goes on to say, more specifically, the defendant's earnings have changed. Furthermore, the defendant has received a substantial inheritance which has improved her financial situation thereby reducing her need for periodic alimony.
Review of the File
This matter was originally initiated pursuant to writ, summons and complaint dated March 30, 1994 and returnable April 19, 1994 in which the plaintiff petitioner sought a dissolution of the marriage and other relief as set forth in the complaint.
Both the plaintiff and the defendant at the time of the 1994 petition were represented by counsel and the same state of affairs continues to this date.
There were a variety of motions filed during the pendency of the petition prior to the actual dissolution including an answer and cross complaint that were filed on May 11, 1994. Both of the children issue of this marital union have now attained their majority and no issues as to the children are presently in dispute.
Financial affidavits of the parties were filed at various stages during the pendency of the proceedings.
At one point in time; to wit, in September of 1996, in the defendant's CT Page 11601 cross complaint, she requested a legal separation rather than a dissolution of the marriage.
On September 26, 1996 the court, Solomon, J., entered a decree of dissolution as concerns the marital union and entered certain orders incident thereto.
A motion to amend the judgment dated October 16, 1996 was granted by the court, Solomon, J.
The judgment by the court, Solomon, J., dated September 26, 1996 contained the following: a finding that the parties had been lawfully married on June 12, 1966 in New York; that residency was established for purposes of jurisdiction; that the marriage had irretrievably broken down; that there were no minor children at the time of the decree.
The court entered the following orders: that the plaintiff husband should quit claim all of his right, title and interest in the marital home at 29 Greentree Drive, Waterford to the defendant; the defendant to assume the mortgage, taxes, insurance thereon, and that the defendant to assume the obligation on a certain note to the defendant's parents. The judgment noted the assignment to the defendant of certain assets, automobiles, savings bond, Dreyfus liquid assets fund, jointly held mutual hinds including Pennsylvania Mutual, Courtland Trust, IM Constellation, AIM Winegarten and Acorn Fund. The Acorn Fund to belong to the now adult children exclusively; that the plaintiff should pay to the defendant $5,000.00 within 60 days payable through counsel; that the defendant should receive from the plaintiffs General Dynamics SSIP the sum of $63,000.00 by Qualified Domestic Relations Order; that the plaintiff should retain as his separate property the balance of the monies in the General Dynamics SSIP in the approximate amount of $125,000.00. Also, the plaintiff should retain the Dreyfus IRA in the amount of $36,000.00, a certain Mercedes Benz automobile, cash value of USAA life insurance policy in the amount of $28,000.00.
The judgment directed that the plaintiffs military pension should be divided equally with the defendant. It also provided that the plaintiffs Electric Boat/General Dynamics pension and its monthly accrued benefits should be divided equally with the defendant as of the September 26, 1996 value. The defendant shall be designated as surviving spouse of the joint survivor annuity as well as the pre-retirement death benefits for the entire benefit as of September 26, 1996. The judgment went on to provide that the plaintiff shall pay alimony to the defendant in the amount of $300.00 per week to terminate upon her death, her remarriage or in the event of a modification on further order of the court. CT Page 11602
The judgment went on to state this order is based on the defendant's earning capacity found to be $250.00 per week. As further alimony, the plaintiff shall maintain and pay the premium on Cobra medical insurance coverage for the defendant at his expense for a period of three years.
It provided for rights incident to the plaintiffs life insurance and that the plaintiff should designate the defendant as the sole irrevocable beneficiary except for the USAA life insurance policy.
This obligation to designate the defendant shall continue with plaintiffs obligation to pay alimony.
The judgment went on as concerns legal fees, a matter here of no consequence, and the division of personal property.
On September 4, 2002, the plaintiff and the defendant with their respective attorneys appeared before the court and testimony was received and exhibits offered with regard to the plaintiffs motion to open and modify judgment, post-judgment, dated February 13, 2002.
From that hearing, the court makes the following findings:
The defendant, Elizabeth W. Ahnell, has not remarried since the 1996 decree. She resides in the same home that was awarded to her at the time of the decree at 29 Greentree Drive in the town of Waterford.
The defendant has continued with her employment with Connecticut College which was the case when the dissolution was granted except that she is now employed on a full-time basis rather than a pad-time basis. Her position is that of a staff assistant.
In October of 2000, the defendant's mother Jean Welch passed away. The defendant is a co-executrix on said estate and the estate is still pending in the state of New York in the appropriate probate district and court. According to the testimony, the defendant and her brother are equal and sole beneficiaries as concerns their late parent. Various and sundry exhibits pertaining to the estate and issues relating thereto were offered which will be touched upon in due course.
A partial distribution has been made from the assets of the Welch estate in the amount of $95,000.00; one-half thereof going to the defendant and one-half to her brother. In addition, the defendant has apparently received reimbursement for expenses incurred by the defendant relative to the funeral of her late parent, probate costs and matters of CT Page 11603 like nature.
The home of the defendant's late parent was in the town of Remsenberg, New York and after the passing of the defendant's parent, according to the testimony, the real estate was sold for and in consideration of the sum of $350,000.00. There was allegedly no mortgage on the home in New York at the time of its sale.
The defendant testified that she is 59 years of age. The marriage prior to its dissolution was for a period of 30 years. The defendant indicated that she has health problems, which include high blood pressure, anxiety, depression, hormone replacement problems, bladder discomfort, osteoarthritis and that she takes medication for the above including sinusitis and medication for a stomach problem.
The defendant's earnings at Connecticut College are reflected on her financial affidavit and will be touched on in due course.
The defendant's employment consists of working 37-1/2 hours a week. Whether the defendant could earn more than what is presently the case is apparently an open question.
The defendant, according to the decree by Solomon, J., receives a portion of her former husband's military pension and the estate in New York is principally under the care and direction of the defendant's brother who apparently is knowledgeable in probate and estate matters.
The defendant's testimony was to the effect that in the spring of 2003 she expects to receive the sum of $250,000.00 + on the closing of the estate.
As noted in the recitation of the decree, the defendant receives part of her former husband's SSIP. At the time of the dissolution, according to the testimony, the amount of value in the SSIP retained by the plaintiff was about $120,000.00.
The defendant testified that although her daughter is an adult that the daughter has a large student loan outstanding and that it is the defendant's intention to help her financially.
The defendant apparently also intends to help her adult son in the event that he returns to school.
The defendant testified that, apparently on the basis of information she secured, the plaintiff is allegedly the beneficiary of a trust and CT Page 11604 would receive one-fifth of the benefits from that as concerns his parent mother at such time as she might go to her reward.
The plaintiff, according to the testimony and exhibits, presently receives nothing from any trust nor as best the court can devine has any enforceable interest therein.
In August of 2002, the defendant traveled to Aruba.
The defendant has, by way of education, a bachelor's degree in liberal arts plus one year in secretarial course work. She has been employed at Connecticut College for ten years.
The plaintiff is age 61. He has not remarried. He is still employed at Electric Boat. As concerns the state of his health, the testimony is to the effect that he has ulcer colitis; that he suffers from bleeding from his intestines; that he is required to undergo the periodic removal of polyps from his system and is obliged to follow certain medical procedures incident thereto.
The plaintiff purchased the home, in which he presently resides, at 68 Blood Street in Lyme in 1996. The plaintiff has not been the recipient of any inheritances.
The plaintiff went on to describe the home at 68 Blood Street, which apparently is a relatively small and modest structure.
The plaintiffs lament is that he cannot save anything if he is obliged to continue with the periodic payment of the outstanding alimony order and the plaintiff is desirous of having the court terminate the award of alimony based on the defendant's present circumstances by virtue of the inheritance from the Welch estate.
Although not appearing on the financial affidavit of the defendant, counsel stipulated that there was absent therefrom on her financial affidavit any reference to the receipt of dividends and interest which she now receives totaling $7,280.00 which sum is noted on defendant's income tax return.
The plaintiff has been employed at Electric Boat for 17 years as an engineer. The plaintiff served for 20 years with the United States Army Corp of Engineers and retired with the rank of lieutenant colonel. He served two tours of duty in the Viet Nam conflict. His education extended to securing a master's degree in engineering. He had prior thereto a degree in civil engineering and during his earlier military career was an CT Page 11605 ROTC instructor.
The court notes that the defendant requests, incident to the proceedings, attorney's fees in the amount of $2,500.00.
Review of Current Financial Affidavits
From the financial affidavit filed by the defendant, the court finds that she is in fact a staff assistant at Connecticut College; that her gross weekly wage therefrom is $363.36. Deductions for federal tax, state tax, FICA, life insurance are relatively modest. There is a voluntary deduction from her compensation for retirement of $72.67. This makes the total deductions, $147.58 for a net of $215.78. In addition thereto, at this time the defendant receives $300.00 a week as alimony and one-half of the plaintiffs military pension amounting $299.65; total gross weekly income, $599.65; total net, $469.33. The defendant's financial affidavit reflects total weekly expenses of $741.95. The itemized deductions include items such as vacation travel, $75.00 a week, gifts $46.00 a week. The only debt shown on the defendant's affidavit is $541.00 to MetLife.
The defendant values the premises that she now owns at 29 Greentree Drive, Waterford at $200,000.00; mortgage of $31,266.00 for an equity of $168,734.00. A 1995 Chevrolet automobile valued at $11,200.00 and a 1986 Chevrolet automobile valued at $850.00; household furnishings, $15,000.00; savings, checking and money market, $45,615.00; stocks, $8,174.00; insurance valued at $5,346.00; deferred compensation plans, General Dynamics, Connecticut College, Connecticut College both IRA and 401, $131,262.00; other assets, bonds and an IRA, $5,085.00. Total cash value, $391,265.00.
As noted, this financial affidavit apparently does not take into account the receipt by the defendant of interest and dividends which was stipulated to by counsel that the defendant now receives incident to assets received from the Welch estate.
As to the plaintiffs financial affidavit, he is employed as an engineer for General Dynamics. Gross weekly wage, $1,388.76; total deductions, $373.41; net, $1,015.35; portion of his Army retirement pension, $307.62 and a VA disability of $23.77 for a total net weekly income of $1,313.92.
Total weekly expenses, which include a variety of items, $1,247.76. No debts shown. Property at 68 Blood Street in Lyme valued at $170,000.00; a mortgage of $112,000.00; net, $57,000.00 approximately. A 1983 Mercedes CT Page 11606 automobile valued at $2,800.00; furnishings, $18,000.00; checking and savings, $2,460.00; Landguide Money Market, $5,100.00; insurance valued at $1,400.00; deferred compensation plans, $330,000.00 for a net of $417,284.00.
Exhibits Submitted by the Plaintiff and Defendant
Plaintiffs Exhibit 1 contains a copy of the will of the late Jean B. Welch presently pending in the Surrogate Court for Suffolk County in New York. Said will provided that the same and any assets thereof be equally divided between the defendant in this matter, Elizabeth W. Ahnell, and her brother, James W. Welch, III. The copy of the will submitted as an exhibit indicates that the decedent's two children, Elizabeth Ahnell and James W. Welch, III, were nominated and appointed as co-executors of the estate.
Plaintiffs Exhibit 2 is a copy of the U.S. income tax return for estates and trusts for the year 2000; form 1041, indicating that income for the subject period to the estate amounted to $17,905.00.
Plaintiffs Exhibit 3 is a statement from the Surrogate Court of the State of New York setting forth a recapitulation of attached schedules indicating then that the total of the estate in New York for tax or other purposes is to the amount of $818,741.72. In arriving at that total, the assets of the estate in New York were categorized; real estate, $242,000.00; stocks and bonds, $524,831.00; mortgages, notes and cash, $42,600.00; miscellaneous property, $9,309.00 for the earlier stated total.
Plaintiffs Exhibit 4, State of New York state tax return indicating that the federal taxable estate of the late Jean B. Welch was $803,445.00; that the tax incident thereto was, $269,143.00.
Plaintiffs Exhibit 5, fiduciary income tax return for the year 2000 for New York State indicating total income for the noted period of $17,905.00.
Plaintiffs Exhibit 6, statement from the Department of Treasury, Internal Revenue Service concerning the estate indicating that the federal tax return for the estate has been accepted as filed.
Plaintiffs Exhibit 7, United States tax return, Form 706, indicating that the total gross estate less exclusion amounted to $787,395.00 and the tentative tax thereon, $256,918.00. CT Page 11607
Plaintiffs Exhibit 8 is a letter from James W. Welch, III to defendant's counsel indicating the status of the estate and indicating that the co-executor is waiting for an audit notice or opposing letter from the Internal Revenue Service.
Plaintiffs Exhibit 9, copy of U.S. individual income tax return for the year 1999 as concerns the defendant; total income shown on her return to the amount of $47,992.00. This includes wages in the amount of $17,430.00; alimony received, $15,600.00; pensions or annuities, $14,694.00.
Plaintiffs Exhibit 10, U.S. individual tax return, Form 1040, for the year 2000 for the defendant indicating total income for that period of $48,201.00 consisting of wages, $14,880.00; interest, $1,577.00; alimony, $15,600.00; pensions and annuities, $15,408.00.
Plaintiffs Exhibit 11, copy of U.S. individual tax return for the year 2001 for the defendant indicating total income for that time frame, $52,114.00 consisting of wages, $13,537.00; interest, $6,548.00; dividends, $735.00; alimony, $15,600.00; IRA, pension or annuity distributions, $15,582.00.
Plaintiffs Exhibit 12, entitled "Defendant's Response to Plaintiff's Request for Production," wherein the defendant provided the requisite tax returns averted to above and indicated it came from the late parent of the defendant to the defendant as set forth on the document. It also indicates an acknowledgment of receipt of $5,000.00 on the use to cover family expenses during the time of the defendant's parent's passing, etc.
Plaintiffs Exhibit 13, statement from Universal Life indicating a net cash surrender value as an asset of the defendant in the amount of $5,887.00.
Plaintiffs Exhibit 14, statement from Charter Oak Federal Credit Union as concerns the defendant indicating a beginning balance, January 1, 2001, $59,738.00. Balance as concerns said account in February of 2001, $59,980.00. A withdrawal therefrom of $22,546.00 on February 13, 2001.
Plaintiffs Exhibit 15, statement from Charter Oak Federal Credit Union to the defendant indicating ending balance in the account as of January 31, 2002 of $49,952.00.
From Defendant's Exhibit A, a series of copies of earning statements for the plaintiff in his work at Electric Boat for the year 1996, 1997, CT Page 11608 1998, 1999, 2000, 2001 indicating that in 2001 his wages consisted of $61,288.04.
The plaintiff at time of hearing, September 4, 2002, filed with the court a memorandum of law in support of Plaintiff's Motion to Modify Alimony and incident thereto copies of cases claimed by the plaintiff to be relevant in this proceeding including Bartlett v. Bartlett,220 Conn. 372, Carlyle v. Carlyle, WL 592243, Dietter v. Dietter,54 Conn. App. 481, Spring v. Spring, WL547269, Conn. Sup. Ct., Standishv. Standish, WL892626.
The Law
Connecticut General Statute Section 46b-86 provides in pertiment part: "(a) unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party."
"In an action for dissolution, the court may assign to either the husband or the wife `all or any part of the estate of the other person,'" citing Connecticut General Statues annotated Section 46b-81 a. Continuing, "in shaping alimony awards, each parties' `estate' is one of the factors the court shall consider," citing Connecticut General Statutes Section 46b-82. "The court may assign property which either spouse received through inheritance. However, the court is limited to distributing property in which a party has a presently existing interest," citing Rubin v. Rubin, 204 Conn. 224 (1987).
"A person's right of inheritance vests at the moment of the decedent's death," citing Emanuelson v. Sullivan, 147 Conn. 406 (1960). It is not necessary to prove actual possession of the inherited assets or actual receipt of the devised income in order to make the necessary showing of a substantial change in circumstances," again citing Bartlett v. Bartlett. The change of circumstances occurs upon the vesting not the distribution.
See also Krause vs. Krause, 174 Conn. 361 (1978) and Eslami vs. Eslami,218 Conn. 801 (1991).
Review of All Financial Affidavits of Both the Plaintiff and theDefendant from the Time of Initiation of the Petition for Dissolution
As to the plaintiff, financial affidavit filed on July 5, 1994, CT Page 11609 employment as an engineer at Electric Boat, weekly gross, $1,007.69; October 24, 1994, same employment, same employer, weekly gross $1,007.69; September 6, 1995, same employment, same employer, weekly gross, $1,007.69; October 30, 1995, same type of employment, same employer, weekly gross, $1,007.69; September 18, 1996, same employment, engineer at Electric Boat, weekly gross, $1,008.46; on September 3, 2002, same type of employment as an engineer with Electric Boat, weekly gross, $1,388.76.
As to the defendant, May 9, 1994, Connecticut College, weekly gross, $83.69, part-time work with the Town of Waterford, $37.50; August 4, 1994, Connecticut College, $83.09, part-time work with the Town of Waterford, $78.35; September 11, 1995, Waterford Parks and Recreation, weekly gross, $104.35, Connecticut College, $36.38; September 25, 1995, Waterford Parks and Recreation, weekly gross, $104.35, Connecticut College, $36.38; September 18, 1996, Waterford Parks and Recreation, $104.35, Connecticut College, $56.00; September 4, 2002, Connecticut College full-time, 37-1/2 hours a week, $363.36.
The court also notes that according to the testimony the debt referred to in the judgment owing to the defendant's parents was in fact never paid and discharged and presumably forgiven.
Discussion
The plaintiff husband has moved to have the periodic alimony payments made to the defendant wife pursuant to the 1996 decree of Judge Solomon modified or terminated.
The court in its findings has touched upon the age of each of the parties, their educational status, their employment status and medical issues. It would appear that the plaintiffs financial circumstances, while they have improved, the improvement has been relatively modest and the plaintiffs increase in compensation from his long-term post at Electric Boat has been relatively modest.
On the other side of the coin, the defendant's income from Connecticut College has increased considerably although the court acknowledges that her overall earned income is relatively modest, all things considered. It is however substantially in excess of what was the case at the time that the matter was heard by Solomon, J.
It would appear that a substantial change in circumstances has occurred by virtue of the defendant's receipt and in part, prospective receipt to a much greater extent of assets coming to her pursuant to the Last Will CT Page 11610 and Testament of her late parent mother.
The court is satisfied that the extent and the amount of these assets are considerable and the testimony supports the same.
The defendant apparently abandoned a motion that had been filed on her behalf with regard to a modification of alimony. It would appear that, upon careful examination of the voluminous exhibits, that the amount of the estate has been fairly well determined; that taxes, federal and state, for all intents and purposes, have been paid and an estate tax closing letter should be forthcoming shortly and that with relative certainty the amount that each may receive, that is the defendant and her brother, is susceptible of being determined with some degree of accuracy.
Clearly the receipt of funds in the amount indicated in the findings and the exhibits are substantial and should markedly assist and protect the defendant in years to come even mindful of whatever medical problem presently exists. In addition, the defendant will continue to receive a portion of the plaintiffs military pension and his SSIP.
By any objective standard there has been a substantial change in circumstances financial by virtue of the defendant's partial receipt and prospective receipt of assets from the Welch estate. The defendant presently discloses assets of $391,265.00 ± on her financial affidavit, which, as noted, does not disclose her receipt of interest and dividends from assets from the estate.
In a few months the defendant expects to receive $250,000.00 + from the estate. Defendant's assets will then be in the amount of $641,265.00 +.
The court enters no order as concerns attorney's fees.
After careful consideration, the court grants the motion to open and modify judgment post-judgment and reduces the alimony award to $1.00 a year. In all other respects, the judgment rendered by the court, Solomon, J., shall remain in full force and effect.
Austin, J. CT Page 11611